Janet L. Hickson (SBN: 198849)
jhickson@shb.com
Mayela C. Montenegro (SBN: 304471)
mmontenegro@shb.com
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614-2546
Telephone: 949-475-1500
Facsimile: 949-475-0016

Attorneys for Defendants Wright Medical Technology, Inc. and MicroPort Orthopedics Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR SIVILLI,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; WRIGHT MEDICAL GROUP, INC., a Delaware corporation; WRIGHT MEDICAL GROUP, N.V., a foreign corporation; MICROPORT ORTHOPEDICS, INC., a Delaware corporation; and DOES 1-20,<br><br>Defendants. | Case No. 3:18-cv-2162-AJB-JLB<br><br>Judge: Hon. Anthony J. Battaglia<br>Ctrm.: 4A (4th Floor Schwartz)<br><br>**DEFENDANTS WRIGHT MEDICAL TECHNOLOGY, INC. AND MICROPORT ORTHOPEDICS, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Filed concurrently with Declaration of Mayela C. Montenegro]<br><br>Date: December 12, 2019<br>Time: 2:00 p.m.<br>Ctrm: 4A (4th Floor Schwartz)<br><br>Complaint Filed: August 1, 2018<br>First Am. Compl. Filed: August 26, 2019 |

## I. INTRODUCTION

Plaintiff Victor Sivilli's ("Plaintiff") opposition to the Motion to Strike and Motion to Dismiss First Amended Complaint filed by defendants Wright medical Technology, Inc. ("Wright Medical") and MicroPort Orthopedics Inc. ("MicroPort") (collectively, "Defendants") confirms that the Court should grant Defendants' Motion.

## II. ALL REFERENCES TO A "MANUFACTURING DEFECT" SHOULD BE STRUCK FROM THE FIRST AMENDED COMPLAINT.

Plaintiff admits he is asserting "manufacturing defect" allegations, but contends that these are proper because they are relevant to his "negligence and other causes of action." Opp'n at 16. Plaintiff misunderstands the spirit of this Court's order. In its Order, this Court evaluated the "manufacturing defect" theory and found that "Plaintiff's allegations fails to allege '*how* the specific PROFEMUR hip system implanted in Plaintiff has a manufacturing defect'" and "he failed to allege any facts alleging how the device deviated from other models." ECF No. 18, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("Court's Order") at 3–5 (emphasis in original). The Court, thereafter, dismissed Plaintiff's cause of action for a manufacturing defect ***without leave to amend***. *Id*. at 9.

To the extent Plaintiff attempts to distinguish a "strict liability" cause of action from a "negligence" cause of action, it is a distinction without a difference. A negligence cause of action will certainly have additional elements, but if Plaintiff is pursuing a manufacturing defect theory, he must still prove that a manufacturing defect existed. As the California appellate court explained:

> Products liability may be premised upon a theory of design defect, manufacturing defect, or failure to warn. A plaintiff may seek recovery in a products liability case either on the theory of strict liability in tort or on the theory of negligence. The rules of products liability focus responsibility for defects, whether negligently or nonnegligently caused, on the manufacturer of the completed product. **Thus, under either a negligence or a strict liability theory of products liability, to**

> **recover from a manufacturer, a plaintiff must prove that a defect caused injury.**

*Trejo v. Johnson & Johnson*, 13 Cal. App. 5th 110, 125 (2017) (internal quotations and citations omitted) (emphasis added). Here, this Court already evaluated Plaintiff's allegations of a manufacturing defect theory and dismissed the theory without leave to amend. Plaintiff's attempt to circumvent the Court's ruling should be rejected, and the references to a "manufacturing defect" should be struck.

**Reference #1 – First Amended Complaint, Paragraph 111**

Plaintiff argues that that the allegations in Paragraph 111 do not involve an alleged manufacturing defect. Opp'n at 16. This is contrary to the plain language itself, which states: "[The device] was ***dangerous, unsafe, and defective in manufacture***. Such defects included . . ." (FAC at ¶ 111.) If this allegation does not involve an alleged manufacturing defect, then it is unknown why the term "manufacture" appears in the allegation. On its face, the plain language reads of a defect in manufacture.

Plaintiff also contends that this is not a new allegation, and he cites to the redlined version of the First Amended Complaint attached as an exhibit to his opposition. Opp'n at 16. This is not entirely true. While the language of the allegation itself was part of the original complaint, it was part of Plaintiff's "Strict Products Liability – Manufacturing Defect" cause of action, which was dismissed by this Court. This language was ***not*** part of Plaintiff's "Strict Products Liability – Failure to Warn" cause of action, as it is now in the First Amended Complaint. (*See* Declaration of Mayela C. Montenegro ("Montenegro Decl."), Exs. A and B (*compare* original complaint at ¶¶ 99, 103–111, *with* First Amended Complaint at ¶ 111.) Plaintiff added this allegation to his "Strict Products Liability – Failure to Warn" cause of action, which makes it a new allegation.

Paragraph 111 should be struck from the First Amended Complaint because it is redundant. To the extent Plaintiff contends he needs this paragraph because of the

reference to "an unreasonably high propensity for corrosion, fretting, and fatigue" (Opp'n at 17), this identical reference is found in Paragraph 112: "The dangers and risks include but were not limited to an unreasonably high propensity for corrosion, fretting, and fatigue under normal and expected use of the device . . ." FAC at ¶ 112. Paragraph 111also is immaterial as the reference to a "manufacturing defect" has no bearing to Plaintiff's "failure to warn" cause of action, which is a completely different theory of product liability. Paragraph 111 of the First Amended Complaint, therefore, should be struck in its entirety.

**References #2–4 – First Amended Complaint, Paragraphs 126, 127, and 160(e)**

As for Paragraphs 126, 127, and 160(e), Plaintiff contends that the term "manufacturing" is relevant to his other causes of action. As discussed above, this is a distinction without a difference. To the extent Plaintiff is pursuing a manufacturing defect theory under his negligence or other cause of action, he must still prove that a manufacturing defect exists. And based on this Court's finding, Plaintiff has not sufficiently pled a manufacturing defect such that leave to amend was not even necessary.

Moreover, Plaintiff's contention that a manufacturing defect could be determined from documents alone is not a plausible argument. (Opp'n at 18) As this Court's analysis demonstrates, a manufacturing defect requires a showing that Plaintiff's own device (the one surgically removed from his body) in some way deviated from its intended design. (*See* Court's Order at 3–4 (collecting cases).) This could only be determined through a physical examination of the subject device (the subject device that was surgically removed from Plaintiff's body), which is typically performed by engineers. Indeed, the subject device, itself, is the key piece of evidence in this case that Plaintiff concedes is missing; and without the device, the parties cannot know whether it was made differently than it should have been made in the

manufacturing process. The terms "manufacturing" and "manufactured" from Paragraphs 126, 127, and 160(e) of the First Amended Complaint should be struck. In sum, Defendant's Motion to Strike should be granted in its entirety.

## III. MICROPORT SHOULD BE DISMISSED FROM THIS ACTION.

It appears Plaintiff is hinging liability on the fact that MicroPort acquired Wright Medical's OrthoRecon Division before Plaintiff's device allegedly fractured, rather than looking at MicroPort's purported role at the time the subject device was designed, developed, marketed, and actually sold to Plaintiff. (Opp'n at 6.) Plaintiff's arguments lack merit.

### A. <u>MicroPort Is Not Liable Under Successor Liability.</u>

Under California law, a corporation that purchases principal assets of another corporation does not assume the seller's liabilities. *Hernandez v. Enter. Rent-A-Car Co. of San Francisco*, 37 Cal. App. 5th 187, 192 (2019). However, there are four instances in which "successor liability" would arise: "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Id*. Here, it appears Plaintiff is attempting to invoke the third exception regarding "mere continuation." (Opp'n at 6.)

"To establish that an acquiring corporation is a mere continuation of the seller, a plaintiff must demonstrate (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; or (2) one or more persons were officers, directors, or stockholders of both corporations." *Id*. at 196-97 (internal quotations omitted). Here, Plaintiff appears to contend that successor liability applies because of the second prong, alleging that "Ted Davis, previously president of [Wright Medical's] OrthoRecon business, went on to lead the MicroPort Orthoepedic business," and

"MicroPort maintained key personnel previously involved in the marketing, sale, post-market surveillance, complaint tracking, and FDA reporting for the PROFEMUR® hip system." (Opp'n at 7; FAC at ¶¶ 60–61.)

In order for the "mere continuation" theory to apply, however, the officers, directors, or stockholders must have been working concurrently in both corporations. *See Hernandez*, 37 Cal. App. 5th at 196 ("one or more persons were officers, directors, or stockholders of both corporations"). *See Akins v. Seterus, Inc.*, No. 216CV01656TLNKJN, 2019 WL 4243221, at *5 (E.D. Cal. Sept. 6, 2019) (finding, in a motion to dismiss, that "nothing indicates that [the buyer] shares common officers with [the seller]"); *Franklin v. USX Corp*., 87 Cal. App. 4th 615, 626–27 (2001) (finding that an individual who was "president and a board member of both the predecessor and the successor corporations" was, by itself, insufficient to establish mere continuation). Based on Plaintiff's own allegations, it appears that Ted Davis and other "key personnel" left Wright Medical to go work for MicroPort. As such, there is no indication that both entities actually shared, concurrently, Ted Davis or the other "key personnel" required to invoke liability against MicroPort.

Moreover, the California Supreme Court has found that "even when the same persons are officers or directors of the two corporations, liability is not imposed on the acquiring corporation when recourse to the debtor corporation is available and the two corporations have separate identities." *Beatrice Co. v. State Bd. of Equalization*, 6 Cal. 4th 767, 778 (1993). *See also Garcia v. New Albertson's, Inc.*, No. 2:13-CV-05941-CAS, 2014 WL 4978434, at *11 (C.D. Cal. Oct. 3, 2014) ("[A] purchasing corporation is not a mere continuation of the seller where, as here, the seller remains a separate entity capable of satisfying judgments against it, and there is no indication that the sale worked the type of inequity that successor liability principles are designed to avoid.") (collecting cases); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1150 (9th Cir. 2004) (noting that while the "mere

continuation" standard is in the disjunctive, "[i]nadequate consideration is an 'essential ingredient' to a finding that one entity is a mere continuation of another") (collecting cases); *Franklin*, 87 Cal. App. 4th at 627 (rejecting reliance solely on the prong of a common officer or director, and noting that without inadequate consideration, there can be no mere continuation).

In this instance, Plaintiff is pursuing recourse against Wright Medical—and Wright Medical concedes that it, alone, is the properly-named defendant in this action (although Wright Medical denies liability). And by Plaintiff's own allegations, Wright Medical and MicroPort are two separate entities. (*See* FAC at ¶¶ 4–7.) Further, there are no allegations that there has been any inadequate consideration for Wright Medical's assets. Plaintiff's allegations that one officer and unidentified "key personnel" left Wright Medical to go work for MicroPort are, by themselves, insufficient to establish "mere continuation" and impose liability on MicroPort. Plaintiff, therefore, has insufficiently pled successor liability. For this reason alone, Plaintiff's successor-liability arguments should be disregarded, and MicroPort should be dismissed from this action.

**B. <u>MicroPort Had No Continuing Duty to Warn.</u>**

To the extent this Court determines that Plaintiff has sufficiently pled mere continuation such as to establish successor liability, Plaintiff has not sufficiently pled MicroPort's purported continuing duty to warn.

Plaintiff contends that MicroPort had a continuing duty to warn only because it was the "successor manufacturer." (Opp'n at 7.) This argument is misguided. While the Ninth Circuit has stated that a "successor corporation may acquire an independent duty to warn where defects in a predecessor's products come to its attention,"[1] it has also provided: "It is equally clear, however, that succession alone does not impose a duty to warn of recently-discovered defects." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 866

[1] The Ninth Circuit also noted that there was no California law on this issue. *Gee*, 615 F.2d at 866.

(9th Cir. 1980). The Ninth Circuit in *Gee* evaluated the relationship between the predecessor and successor entities, and found there was no relationship between both entities, the successor had no relationship with users of the predecessor, and the successor was not deriving a benefit from the predecessor. *Id*. The Ninth Circuit also found there was nothing to indicate that the plaintiff's decedent had any contact with the successor following his use of the product. *Id*.

Here, there are no allegations that Wright Medical and MicroPort continued to have a relationship after the acquisition and that the relationship involved the PROFEMUR® hip system; there are no allegations that MicroPort had a relationship with Wright Medical's users or customers; and there are no allegations that MicroPort was deriving a benefit from Wright Medical or from the PROFEMUR® hip system devices that were sold by Wright Medical prior to the acquisition. There are also no allegations that Plaintiff, himself, had any contact with MicroPort following the implantation of the subject device. Given the absence of these allegations, Plaintiff has not sufficiently pled that MicroPort had a continuing duty to warn solely because it was a purported successor manufacturer.

The opinions relied on by Plaintiff are inapposite to the issue at hand because they involve a duty to warn by the product's manufacturer, not a successor manufacturer. (*See* Opp'n at 7–8.) Wright Medical does not challenge, at this stage of the proceeding, Plaintiff's failure-to-warn claim against Wright Medical, but there are no grounds for a failure-to-warn claim against MicroPort. Moreover, the regulations cited by Plaintiff, 21 C.F.R. §§ 803, 803.50, 806, 820.3, do not reference successor manufacturers, they do not have language suggesting that "a successor manufacturer steps into the shoes of its predecessor with respect to the duties of reporting on and warning of defects" (Opp'n at 8), and they certainly do not impose obligations onto a successor manufacturer of a device that was designed, developed, marketed, and sold prior to the successor manufacturer's acquisition of assets.

To the extent Plaintiff contends that MicroPort has an independent duty to warn because it acquired Wright Medical's OrthoRecon Division, such proposition is not supported by California law. Notably, "California has not adopted an independent duty to warn theory of liability" as it pertains to a successor corporation. *Burroughs v. Precision Airmotive Corp.*, 78 Cal. App. 4th 681, 698 (2000). *See Gee*, 615 F.2d at 866 (the Ninth Circuit noting that there was no California law on the "issue of a successor corporation's duty to warn of defects in products manufactured by a predecessor").

In sum, Plaintiff has not pled sufficient factual allegations to make a plausible claim against MicroPort. First, MicroPort's acquisition took place more than six years ***after*** Plaintiff was implanted with the PROFEMUR® hip system, thus MicroPort could not have been involved with the design, development, marketing, or sale of the device at issue in this case. (*See* Mot. at 9 – 10.) Second, Plaintiff has not pled sufficient facts to establish successor liability under a "mere continuation" theory since the alleged presence of one former officer and unidentified "key personnel," by itself, is not enough to invoke liability. Third, under California law, there is no basis for MicroPort to have had a continuing duty to warn on the PROFEMUR® hip systems that were developed and sold by Wright Medical; and, there are insufficient allegations to establish any type of continuing relationship between Wright Medical and MicroPort in order to invoke liability onto MicroPort.[2] Plaintiff's only basis for liability against MicroPort is the fact that MicroPort acquired certain assets in 2014. That, alone, is not only unsupported by California law, but it is bad public policy as it would mean that every successor entity would always be liable in some way. This runs contrary to the default rule that a corporation that purchases principal assets of

[2] Wright Medical maintains these arguments in response to Plaintiff's arguments set forth in his Opposition pages 9–12. Plaintiff's arguments lack merit because they presume a continuing duty to warn on a successor manufacturer, which is not recognized under California law or in the caselaw relied on by Plaintiff.

another corporation does not assume the seller's liabilities. *Hernandez*, 37 Cal. App. 5th at 192. This Court should dismiss MicroPort with prejudice.

## IV. PLAINTIFF'S CLAIM FOR NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED.

Plaintiff's continued failure to provide sufficient factual allegations as to his negligent misrepresentation claims warrants dismissal of this claim. First, despite Plaintiff's purported new factual allegations, they fail to clearly differentiate the role each defendant purportedly took in the larger fraudulent scheme as it pertains to Plaintiff Victor Sivilli. Second, Plaintiff's allegations concerning MicroPort make a negligent misrepresentation claim implausible. Since MicroPort allegedly acquired Wright Medical assets more than six years ***after*** Plaintiff's implant surgery, there is no way MicroPort could have made any type of misrepresentation to Plaintiff or could have had any intent to defraud Plaintiff, nor could Plaintiff have been able to rely on MicroPort's purported misrepresentation since MicroPort was not involved with the PROFEMUR® hip system at the time of Plaintiff's implant surgery. Further, there is no way Plaintiff could have suffered damages by MicroPort's purported misrepresentation if MicroPort was not in the picture at the time of Plaintiff's implant surgery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that the complaint must have enough facts "to state a claim to relief that is plausible on its face"). To the extent Plaintiff suggests MicroPort is liable through its role as a successor manufacturer, this position is unsupported by California law. (*See supra*, § III.) For these reasons, Plaintiff's negligent misrepresentation claim should be dismissed.

## V. CONCLUSION

Based on the foregoing, Defendants request the Court grant their motion to strike and motion to dismiss, and dismiss MicroPort from this action with prejudice.

Dated: October 1, 2019

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: *\/s/ Mayela C. Montenegro*
Janet L. Hickson
Mayela C. Montenegro
Attorneys for Defendants Wright Medical Technology, Inc. and MicroPort Orthopedics Inc.