UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR SIVILLI,<br><br>                          Plaintiff,<br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; WRIGHT MEDICAL GROUP, INC., a Delaware corporation; WRIGHT MEDICAL GROUP, N.V., a foreign corporation; MICROPORT ORTHOPEDICS, INC., a Delaware corporation; and DOES 1-20,<br>                          Defendants. | Case No.: 3:18-cv-02162-AJB-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS.**<br><br>**(Doc. No. 20)** |

      Presently before the Court is Defendants Wright Medical Technology, Inc. ("Wright Medical") and Microport Orthopedics, Inc.'s ("Microport" collectively with Wright Medical, "Defendants") motion to strike and motion to dismiss Plaintiff Victor Sivilli's ("Plaintiff") First Amended Complaint. (Doc. No. 20.) Plaintiff opposed both motions. (Doc. No. 22.) The Court held a hearing on Defendants' motions on December 12, 2019. (Doc. No. 26.) For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to strike, and **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.

## I. BACKGROUND

This case is a products liability action arising out of the alleged failure of a hip replacement device. (First Amended Complaint ("FAC"), Doc. No. 19 ¶ 1.) Plaintiff claims Defendants have known their hip replacement device—the Profemur Total Hip System—was prone to fail within a few years of implantation despite most hip implant devices typically lasting more than 20 years. (*Id.*) The Profemur device offers a modular neck component made of cobalt chromium alloy, and Plaintiff alleges Defendants have known the device tends to fracture at the neck of the Profemur device. (*Id.*)

On July 10, 2007, Plaintiff had a Profemur device implanted by way of a right total hip arthroplasty. (*Id.* ¶ 73.) Then in January 2014, Defendant Microport acquired Defendant Wright Medical's "OrthoRecon Division," which included Wright Medical's hip/knee division responsible for designing and selling the Profemur neck component. (*Id.* ¶ 3.) Ted Davis, the previous president of Wright Medical's OrthoRecon business, went on to lead the Microport Orthopedic business. (*Id.* ¶ 60.) Plaintiff alleges that as part of the January 2014 acquisition of Defendant Wright Medical's OrthoRecon Division, Defendant Microport maintained key personnel previously involved in the marketing, sale, post-market surveillance, complaint tracking, and FDA reporting for the Profemur hip system. (*Id.* ¶ 61.)

On August 15, 2016, the neck component of the Profemur device allegedly fractured in Plaintiff's hip, and he was taken to the emergency room where he underwent a revision surgery to have the Profemur hip implant system surgically removed. (*Id.* ¶ 76, 78–79.) Plaintiff alleges he has suffered from unnecessary pain, debilitation, and hospitalization, and was forced to undergo revision surgery because the device was defective and Defendants failed to adequately warn of the dangers of the device. (*Id.* ¶ 2.)

## II. PROCEDURAL HISTORY

Plaintiff filed his complaint in the Superior Court of the State of California for the County of San Diego on August 1, 2018. (Doc. No. 1-3.) The case was removed to this Court on the basis of diversity jurisdiction on September 17, 2018. (Doc. No. 1.) On

2

September 24, 2018, Defendants filed a motion to dismiss, and the Court granted in part, and denied in part Defendants' motion on August 13, 2019. (Doc. Nos. 3, 18.) The Court dismissed Plaintiff's manufacturing defect claim without leave to amend, and dismissed Plaintiff's fraud-related claims with leave to amend. (Doc. No. 18 at 9.) Plaintiff filed his First Amended Complaint on August 26, 2019. (Doc. No. 19.) Remaining in Plaintiff's FAC are claims for relief for: (1) strict products liability for failure to warn, (2) negligence, (3) negligence for failure to recall/retrofit, (4) fraudulent misrepresentation, (5) fraudulent concealment, and (6) negligent misrepresentation. (*Id.*) On September 9, 2019, Defendants filed a motion to strike and a motion to dismiss Plaintiff's FAC. (Doc. No. 20.) The motion was fully briefed, and the Court held oral argument on December 12, 2019. This order follows.

**III. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

Defendants request judicial notice of a copy of a letter dated October 23, 2018, sent by Plaintiff's counsel to Defendants' counsel regarding the unknown location of the Profemur hip system that was implanted into, and surgically removed from Plaintiff's body. (Doc. No. 20-2 at 2.) Plaintiff does not oppose the request for judicial notice. Federal Rule of Evidence 201(b) permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041–42 (S.D. Cal. 2015).

Here, the fact regarding the unknown location of the Profemur hip device is not generally known within this Court's jurisdiction. However, as confirmed at oral argument, it is undisputed that the parties are unaware of the location of the original hip system implanted into, and surgically removed from Plaintiff's body. Additionally, none of the parties question the accuracy or authenticity of the letter. As such, the Court **GRANTS** Defendants' unopposed request for judicial notice.

//

## IV.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure Rule 12(f)

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In ruling on a motion to strike, just as with a motion to dismiss, the court must view the pleadings in a light most favorable to the nonmoving party. *See In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

The purpose of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (citation omitted). However, courts often view motions to strike with disfavor, and therefore will not grant a motion to strike "unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted); *see also Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). The court should deny the motion to strike if "there is any doubt as to whether the allegations might be an issue in the action." *In re 2TheMart. com*, 114 F. Supp. 2d at 965 (emphasis in original).

### B.  Federal Rule of Civil Procedure Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th

4

Cir. 2007). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.

## V.   DISCUSSION

The Court will first address Defendants' motion to strike, and will follow with a discussion of Defendants' motion to dismiss.

### A.   Defendants' Rule 12(f) Motion to Strike

Defendants first move to strike all references to manufacturing defects in Plaintiff's FAC. (Doc. No. 20-1 at 8.) In particular, Defendants argues that the references to manufacturing defects circumvents the Court's August 13, 2019 order dismissing Plaintiff's manufacturing defect claim without leave to amend, and essentially adds new manufacturing allegations to the FAC. (*Id.*)

Rule 12(f) permits the Court to strike from any pleadings any "immaterial matter." Fed. R. Civ. P. 12(f). Such matters are those that have "no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." *Rivers v. Cty. of Marin*, No. C 05-4251, 2006 WL 581096, at *3 (N.D. Cal. Mar. 7, 2006). The Court will analyze in turn whether each reference to manufacturing defects is to be stricken from the FAC.

#### 1.   Reference No. 1

Defendants first take issue with Reference #1 in Plaintiff's FAC. (Doc. No. 20-1 at 9.) Reference #1 is nestled in the "First Claim for Relief: Strict Products Liability – Failure To Warn" section of the FAC, and states:

> At all times relevant hereto, the PROFEMUR® Total Hip System was

> dangerous, unsafe, and ***defective in manufacture***. Such defects included but were not limited to an unreasonably high propensity for corrosion, fretting, and fatigue under normal and expected use of the device, leading to fracture of the modular neck and catastrophic failure of the device, requiring revision surgery.

(FAC ¶ 111 (emphasis added).)

While Plaintiff argues this allegation "does not concern a manufacturing defect," the Court is not convinced that is true given the unequivocal reference to the Profemur device being "defective in manufacture." (*Id.*) As Plaintiff's manufacturing defect claim did not survive Defendants' first motion to dismiss, Plaintiff may not rely on any reference to defects in manufacturing to continue to assert allegations of a manufacturing defect. However, the Court will also not entertain Defendants' request to strike the entire paragraph. (Doc. No. 20-1 at 9.) Paragraph 111 of the FAC, without reference to a manufacturing defect, may stand as an allegation relevant to Plaintiff's strict liability failure to warn claim that the Profemur device had "potential risks that were known or knowable" to Defendants. *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011 (N.D. Cal. 2009), aff'd sub nom., *Rosa v. Taser Int'l*, Inc., 684 F.3d 941 (9th Cir. 2012) (stating elements of strict liability failure to warn claim under California law).

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to strike Reference #1. The reference to "defective in manufacture" is stricken from the FAC. However, the rest of paragraph 111 of the FAC may remain as alleged.

### 2. Reference Nos. 2–3

Next, Defendants maintain that References #2 and #3 should be stricken from the FAC because of its mention of "manufacturing." Reference #2 and #3 appear under Plaintiff's second claim for relief for negligence, and alleges:

- As a direct, legal, proximate, and producing cause of Defendants' negligent design, testing, ***manufacturing***, marketing, selling, and promoting the PROFEMUR® Total Hip System, Plaintiff suffered injuries as set forth above. (FAC ¶ 126 (emphasis added).)

- Defendants' negligent design, testing, *manufacturing*, selling, and promoting the PROFEMUR® Total Hip System, was a substantial factor in causing Plaintiff's injuries as set forth above. (FAC ¶ 127 (emphasis added).)

Plaintiff contends the term "manufacturing" need not be sanitized from the FAC because the allegations "are relevant to Plaintiff's negligence and other causes of action." (Doc. No. 22 at 24.) The Court does not agree. In order to prove a negligence theory based on a manufacturing defect, Plaintiff will need to prove a duty and breach as it relates to the manufacturing of the Profemur device in the first place. Plaintiff has simply failed to provide any facts as to how the Profemur device implanted in Plaintiff deviated from Defendant Wright Medical's intended result. Plaintiff may not masquerade a manufacturing defect claim as a negligence claim to end run the Court's order dismissing the manufacturing defect claim for relief. *See Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 709 (E.D. Cal. 2019) (dismissing both strict liability and negligence theories of manufacturing defect claim for failure to plead how the product deviated from the manufacturer's intended result).

Therefore, the Court **GRANTS** Defendants' motion to strike the term "manufacturing" from paragraphs 126 and 127 of Plaintiff's FAC. The remaining portions of paragraphs 126 and 127 may stand as alleged.

### 3. Reference No. 4

Finally, the Court examines whether the term "manufacturing" should be stricken from Reference #4. In relevant part, Reference #4 from the "fraudulent concealment" section of Plaintiff's FAC states:

> In representations to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, Wright and Microport intentionally omitted, concealed or suppressed material information regarding the safety and performance of the PROFEMUR® Total Hip System, including, but not limited to . . . The PROFEMUR® Total Hip System was designed, *manufactured*, marketed, promoted, distributed, and sold negligently, defectively, and/or improperly[.]

(FAC ¶ 160(e).)

For similar reasons as those stated above, Plaintiff's references to "manufactured" are improper as they are an attempt to revive Plaintiff's manufacturing defect claim. Additionally, the reference is immaterial and unnecessary because Plaintiff may still rely on defective design or negligence as a basis for its fraudulent concealment claim. Accordingly, the Court **GRANTS** Defendants' motion to strike the term "manufactured" from paragraph 160(e). The rest of paragraph 160(e) of the FAC may remain as alleged.

### B. Rule 12(b)(6) Motion to Dismiss

The Court now turns to Defendants' motion to dismiss. Specifically, Defendants move to dismiss (1) Microport as a defendant in this action; and (2) Plaintiff's negligent misrepresentation claim. (Doc. No. 20-1 at 12–15.)

#### 1. Microport is Dismissed from the Action

Defendants request dismissal of Microport from this action because Microport "was not involved with the PROFEMUR® device until more than six years after Plaintiff was implanted with the PROFEMUR® hip system." (Doc. No. 20-1 at 12.) While Plaintiff's implantation of the Profemur device occurred in 2007, Microport allegedly did not acquire Wright Medical's hip implant device division until January 2014. (FAC ¶ 59.) In opposition, Plaintiff rebuts that Microport is liable as Wright's successor because "MicroPort manufactured, marketed, and sold the Profemur Device for two and one-half years before the Profemur titanium modular neck fractured in Mr. Sivilli's hip." (Doc. No. 22 at 12.)

Under California law, when a corporation purchases the principal assets of another corporation, the purchaser does not assume the seller's liabilities *unless*: "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Hernandez v. Enter. Rent-A-Car Co. of San Francisco*, 37 Cal. App. 5th 187, 192 (2019) (quoting *Ray v. Alad Corp.*, 19 Cal.3d 22, 28 (1977)). At issue is whether the third exception applies to impose liability onto Microport

as a "mere continuation" of Wright Medical.

Plaintiff argues that Microport, as the purchaser of Wright Medical's hip device division, is liable as a successor manufacturer because Microport is a "mere continuation" of Wright Medical. (Doc. No. 22 at 12.) Under California law, a "mere continuation" exists upon the showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; or (2) one or more persons were officers, directors, or stockholders of both corporations. *See Alad Corp.*, 19 Cal. 3d at 28. Plaintiff maintains the second element is applicable. Specifically, Plaintiff points out that Microport hired Ted Davis, Wright Medical's former OrthoRecon Division President, to lead its orthopedic business, and Microport "maintained other crucial personnel previously involved in Wright's marketing, sale, post-market surveillance, complaint tracking, and FDA reporting of/for the Profemur Device." (Doc. No. 22 at 13 (quoting FAC ¶¶ 59–61).) Defendants disagree, maintaining "the officers, directors, or stockholders must have been working concurrently in both corporations." (Doc. No. 23 at 6.)

While case law does not support Defendants' contention that the officers, directors, or stockholders must have been working for both corporations simultaneously, the Court agrees with Defendants that applying the "mere continuation" exception would be inappropriate. "[E]ven when the same persons are officers or directors of the two corporations, liability is not imposed on the acquiring corporation when recourse to the debtor corporation is available and the two corporations have separate identities." *Beatrice Co. v. State Bd. of Equalization*, 6 Cal. 4th 767, 778 (1993). And, the imposition of successor liability under the "mere continuation" doctrine requires that the predecessor entity that was purportedly acquired by the successor entity no longer exist. *See Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1064 (N.D. Cal. 2007) ("With regard to the third exception, the 'mere continuation' doctrine [] requires that the selling entity dissolve—because only one corporation may remain after the transaction."). Here, Plaintiff is pursuing recourse against Wright Medical, who concedes that it alone is the properly

9

named defendant in this action. (Doc. No. 23 at 7.) Moreover, Plaintiff himself acknowledges that Wright Medical and Microport are two separate entities, and Wright Medical, as the precedessor entity, still exists. (FAC ¶¶ 4–7.)

Furthermore, in *Alad*, the California Supreme Court contemplated a situation, such as here, in which none of the four exceptions apply to impose liability on a successor corporation in a strict products liability action. The *Alad* court noted that the purpose of the doctrine of strict products liability "is to insure that the costs of injuries be borne by the manufacturers that put such products on the markets rather than by the injured persons who are powerless to protect themselves." *Alad Corp.*, 19 Cal. 3d at 30. In light of these principles, the court concluded that strict liability could still be imposed upon the successor to a manufacturer where: "1) the plaintiff's remedies against the original manufacturer are effectively destroyed by the successor's acquisition of the business; 2) the successor is able to assume the original manufacturer's risk-spreading role; and 3) it is fair to require the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of its business." *Alad Corp.*, 19 Cal. 3d at 31. In effect, *Alad* created a fifth exception to the general rule against imposing liability on a successor corporation in product liability cases. But as illuminated above, this fifth exception does not apply because Plaintiff is unable to show that his remedies against Wright Medical are destroyed by Microport's acquisition of the OrthoRecon division. Wright Medical has not been dissolved, and Plaintiff has properly asserted claims against Wright Medical.

Accordingly, the Court **DISMISSES** Defendant Microport. The Court need not address any further arguments concerning Microport's liability because those arguments are contingent upon a finding that Microport is a suitable defendant, which it is not.

### 2. Defendants' Motion to Dismiss Plaintiff's Claim for Negligent Misrepresentation is Denied.

Defendants move to dismiss Plaintiff's negligent misrepresentation claim on the ground that Plaintiff impermissibly lumps together both Wright Medical and Microport in

the FAC. (Doc. No. 20-1 at 14.) However, Microport's dismissal from this action moots this argument as against Microport. Nevertheless, the Court reviews the FAC and Defendants' motion to dismiss to assess whether a negligent misrepresentation claim has been adequately pled against Wright Medical.

The elements of a negligent misrepresentation claim are: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damages." *Mottale v. Kimball Tirey & St. John, LLP*, No. 13cv1160-GPC-JMA, 2013 WL 5570193, at *3 (S.D. Cal. Oct. 9, 2013) (quoting *Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc.*, 171 Cal. App. 4th 35, 50 (2009)).

The Court holds that Plaintiff has sufficiently pled a negligent misrepresentation claim for relief against Wright Medical. Here, Plaintiff alleges Wright Medical misrepresented the safety of the Profemur device. (FAC ¶ 26 (alleging that Wright Medical's marketing materials included statements such as "[n]one of the necks has experienced a clinical failure since their inception.") Plaintiff pleads that there were unreasonable grounds for Wright Medical to believe the statement to be true. (*See e.g.*, FAC ¶ 93 ("The Device was known by Wright to be failing from fatigue failures of the modular necks prior to December 13, 2000, the date it received permission from the FDA to distribute these devices in the United States."). Plaintiff additionally provides that Wright Medical intended to induce justifiable reliance on the misrepresentation. (FAC ¶ 144, 148 ("Plaintiff was induced to continue believing that the PROFEMUR® Total Hip System implanted in his hip was safe and would not fracture and that there would be no need for him to make adjustments to his activities or seek a prophylactic revision surgery to replace the Device."). Lastly, Plaintiff alleges adequate damages arising out of his injury. (FAC ¶ 108.)

Thus, Plaintiff's claim for negligent misrepresentation against Wright Medical survives Defendants' motion to dismiss.

## VI. CONCLUSION

Based on the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to strike, **DISMISSES** Defendant Microport from the action, and **DENIES** Defendants' motion to dismiss Plaintiff's negligent misrepresentation claim against Wright Medical. Plaintiff must file an amended complaint consistent with the instructions provided herein **within 21 days** from the date this order is filed.

**IT IS SO ORDERED.**

Dated: May 29, 2020

Hon. Anthony J. Battaglia
United States District Judge